156 So. 829

# EVERGLADES CONST. CO. v. AMERICAN SURETY CO.

## 3 Div. 96.

Supreme Court of Alabama.

Oct. 11, 1934.

Steiner, Crum & Weil, of Montgomery, for appellee.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

**PER CURIAM.**

For the purposes of this appeal, no question of pleading being involved, this may be said to be a suit for an accounting by appellee, American Surety Company, against appellant, Everglades Construction Company, and the Southern Surety Company. The trial

⊙⟶For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

court confirmed the report of the register, made after reference held, and rendered a money decree against the defendants. From that decree, the Everglades Construction Company, alone, appeals.

Everglades Construction Company was awarded a contract by the state highway department for the construction of certain bridges in Houston county, at a base price of some $55,000. In connection therewith, the Everglades Company executed a statutory contractor's bond, with the Southern Surety Company as surety. Thereafter the Everglades Company sublet the work, or rather sold its contract, to one Moody. Under this arrangement Moody was to pay to Everglades Construction Company a consideration of $3,500 and was to receive all payments made by the state. In this connection, Moody executed to Everglades Construction Company a bond, with American Surety Company as surety.

After performing the major part of the work, Moody defaulted. The highway department called upon Everglades Construction Company, the original contractor, and Southern Surety Company, its surety, to complete it. The Everglades Company thereupon notified American Surety Company of Moody's default and called upon it, as Moody's surety, to complete the contract. American Surety Company declined, whereupon Southern Surety Company "employed" Everglades Construction Company to complete the contract. This it did.

Payment of the contract price by the state highway department was made on estimates as the work of construction progressed. Several payments on estimate were made during the time Moody was engaged on the project; but the highway department, recognizing only the original contractor, made all vouchers or warrants covering estimates payable to Everglades Construction Company.

After the work was finally completed and accepted by the highway department, suit was instituted in the circuit court by one claiming to have furnished materials or supplies to Moody, the subcontractor, against Southern Surety Company, as surety on the bond given by the original contractor to the state. Other claimants intervened by filing complaints in the case. By agreement, the cause was transferred to the equity docket, where other claimants intervened. The original contractor and its surety then called upon American Surety Company to take care of these claims. The surety company did so, paying out on this account something over $30,000, and taking assignments of such claims to itself.

By its pleading (in form a cross-bill), American Surety Company recognized its liability under its bond to Everglades Construction Company to indemnify the latter against loss on account of Moody's default, but contended that the amount expended by it in the discharge of claims incurred by Moody was largely in excess of any loss suffered by the Everglades Company. It sought to have an accounting by the Everglades Company for payments made to it by the state. The Everglades Company denied any liability to so account. The assignments of error relate to specific items of credit claimed by the Everglades Company and disallowed by the court.

Without dispute, the total amount paid by the state on account of this contract was $57,430.34. Of this amount, appellant received payments aggregating $46,858.09. The final payment of $10,572.25, in form of a voucher payable to appellant, was in fact received by Southern Surety Company. The surety collected and withheld this money from appellant as security or indemnity on account of outstanding claims for labor and materials consumed on the project. Apparently this retained payment was never paid over by the surety to appellant, and we note that the surety was thereafter placed in the hands of a receiver.

The contract between the Everglades Company and Moody, the subcontractor, provided that Moody was to furnish a bond to said Everglades Company "guaranteeing the completion of said job under the terms of the original contract between the Everglades Construction Company and Alabama State Highway Department." The bond was made by the appellee and whether it be technically termed one of guaranty or surety matters not as it is manifest that it was intended to protect the appellant against any loss sustained by it because of Moody's failure to perform the contract. Moody defaulted and had he not done so the appellant would have been entitled to receive the $3,500 which Moody agreed to pay. Therefore, when appellant undertook to and did complete the job, and received the original contract price, it was entitled to said $3,500 and had the right to retain said amount upon this accounting. The appellee, in effect, stood in the shoes of Moody, and had Moody completed the job, there could be no question but what the appellant would have received the $3,500 then, it having completed the contract, instead of Moody, and having earned and received the original

contract price, it had the right to retain the $3,500 which Moody agreed to pay. It seems that $2,400 of this amount was so retained and not charged to the appellant, but the trial court did charge it with $1,100 of said amount upon the accounting and as to this there was error and the decree of the trial court, to this extent, must be corrected.

■ Appellant claimed to have advanced to Moody in cash in course of the construction and before default by him, an aggregate of $31,169.67. Credit was allowed appellant for this outlay. It claimed further that it had expended $13,134.86 in completing the contract after Moody's default. Included in this total there was an item of $830 for attorney's fees and expenses. This item was disallowed both by the register and by the court on final decree, and appellant urges this action as error. To sustain its asserted right to have credit for this item, appellant had the burden of showing that it constituted a legitimate expense in the completion of the contract. This it failed to do. The testimony as to the services performed by the attorneys is quite indefinite and omissive. It shows at most that the attorneys were employed in and about the situation created by Moody's default, that they made trips to the scene of the construction and carried on some correspondence with reference to some attachment suits involving materials or equipment. The nature of the suits is not shown. What the attorneys actually did, what result was attained or hoped to be attained is left to vague conjecture. In this state of the testimony we are unable to affirm error as to this item. Furthermore, weight is to be accorded the finding of the register upon testimony taken orally before him.

■ The contention that appellant should have been allowed a profit of 10 per cent. for its labor in finishing the contract is wholly without basis in any contract or agreement between the parties. One witness for appellant on the hearing testified that such a profit was usually figured. An allowance of 5 per cent. as "overhead" was insisted upon on the hearing before the register. The register found against appellant as to this, but the trial court corrected the report in this respect and allowed the credit.

■ Of the amount found to be due by appellant to appellee, the trial court added interest from the date of the filing of appellee's bill. Appellant contends that appellee was not entited to interest unless and until all claims for labor and materials furnished the subcontractor had been discharged by appellee, insisting that two or more such claims were outstanding. It appears that all such claims were before the court by original suit at law or intervention (all of which became merged in the equity proceedings). It is not made to appear that the claims referred to were allowed. Indeed, the register, in making his report, states that they had not then been allowed and therefore omitted them from his calculations. The final decree makes no reference to them, treating only those claims actually paid by appellee. There is strong inference that these claims, though litigated, were disallowed. At no place in the proceedings on the accounting did appellant claim credit on this account. This is the only reason assigned against the allowance of interest; it cannot be sustained.

The decree of the circuit court is corrected by reducing same $1,100 with interest from December 29, 1930, to October 31, 1933 (the date of the decree of the circuit court), and as thus corrected, the decree is affirmed.

Corrected and affirmed.

ANDERSON, C. J., and GARDNER, BOULDIN, and FOSTER, JJ., concur.